## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Roynal Walker,**
**Petitioner Below, Petitioner**

**FILED**

April 16, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 12-0138** (Berkeley County 07-C-1139)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

### MEMORANDUM DECISION

Petitioner Roynal Walker, by counsel Christopher J. Prezioso, appeals the January 18, 2012 order of the Circuit Court of Berkeley County denying his petition for writ of habeas corpus. Respondent Ballard, by counsel Christopher J. Quasebarth, filed a response, to which petitioner has filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2006, petitioner was sentenced to a term of incarceration of life, without the possibility of parole, following his jury conviction of first degree murder. Petitioner appealed this conviction, but this Court refused the same by order entered on February 27, 2007. Petitioner thereafter filed a petition for writ of habeas corpus in the circuit court. After holding an omnibus evidentiary hearing in November of 2011, the circuit court denied the petition.

On appeal, petitioner alleges several assignments of error. However, petitioner is simply re-alleging multiple grounds for relief cited in his circuit court habeas petition, and his assignment of error on appeal is more accurately stated as alleging error by the circuit court in denying his petition. According to petitioner, he is entitled to habeas relief because he received ineffective assistance of counsel. Petitioner argues that his trial attorney had only two years of experience at the time she represented him, and she was subsequently disbarred and convicted of felony fraud charges. Petitioner further alleges that he was entitled to habeas relief because there was insufficient evidence to support his conviction, his sentence violates the Eighth Amendment to the United States Constitution, and he may have been incompetent to stand trial.

In response, the State argues that the circuit court properly denied the habeas petition after holding an omnibus evidentiary hearing. According to the State, petitioner has failed to show that the circuit court's findings of fact were clearly erroneous or that the circuit court misapplied the

1

law in deciding the issues. The State also argues that petitioner has failed to establish any relevancy or causal connection between his prior counsel's criminal convictions and his own trial. According to the State, the circuit court properly reviewed the pleadings, evidence, and record of petitioner's criminal trial in denying habeas relief.

This Court has previously held that

[i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). After careful consideration of the parties' arguments, this Court concludes that the circuit court did not abuse its discretion in denying the petition for writ of habeas corpus. Having reviewed the circuit court's "Final Order Denying Petition For Habeas Corpus" entered on January 18, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we find no error in the decision of the circuit court and its January 18, 2012, order denying the petition for writ of habeas corpus is affirmed.

Affirmed.

**ISSUED: April 16, 2013**

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

C Prezioso 12-0138

IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA

STATE ex rel. ROYNAL WALKER,

Petitioner,

v.

Case No.: 07-C-1139
(Judge Groh)

THOMAS MCBRIDE, Warden,

Respondent.

## FINAL ORDER DENYING PETITION FOR HABEAS CORPUS

On November 14, 2011, came the Petitioner, in person and by counsel Christopher J. Prezioso, and the Respondent, by counsel Christopher C. Quasebarth, Chief Deputy Prosecuting Attorney, for an evidentiary hearing on the Petitioner's Petition for Post-conviction Habeas Corpus. Upon the evidence then taken, upon the papers and pleadings herein, the argument of counsel, and a review of the underlying criminal case, State v. Roynal Walker, Berkeley County Case No: 05-F-241, the Court denies the Petition for Habeas Corpus.

### FINDINGS OF FACT

A. The Criminal Trial, State v. Roynal Walker, Berkeley County Case No: 05-F-241.

1. The Petitioner was indicted for First Degree Murder for the March 2005 shooting death of Arthur Doakes. [Indictment, 10/19/05.]

2. At a pre-trial hearing on January 27, 2006, the circuit court considered the admissibility of the Petitioner's oral statements, which statements the Petitioner did not contest. [Tr., 1/27/06, 6, 51-52.]

3. The circuit court also considered the State's **W.V.R.E.** 404(b) motion. The Petitioner did not contest:

> a. His own oral statement to police that he has not sold drugs for nine years. [Tr., 1/27/06, 8.]
>
> b. The intrinsic nature of the evidence from Cheri Marchesani, Wendell Turner and Marina Hostler (persons all present at the scene) that Mr. Doakes was present at the Petitioner's apartment that night to obtain drugs or money. [Id., 8, 10]
>
> c. A statement from a witness that the Petitioner has been sober but has been known to use drugs and sell in the past. [Id.]

d. The State's representation that it will only use a witness in federal custody (Kristin Child) for impeachment if the Petitioner takes the stand. [Id., 9, 10.] [Id., 8-11.]

4. During *jury voir* dire on February 7, 2006, the jury was asked, among other things, if anyone had any experience with illegal drugs or death around illegal drugs. [Tr. 2/7/06, 32-33.]

5. During opening statements, the State told the jury, among other things, that:

a. Mr. Doakes, Ms. Marchesani and Mr. Turner were looking for crack. [Id., 113.]

b. The Petitioner told Berkeley County Sheriff's Captain Bohrer that the victim had been at his home trying to buy drugs but that he hadn't sold drugs for nine years. [Id., 115.]

c. A witness will say the Petitioner did sell drugs from this apartment. [Id., 116.]

6. At trial, Berkeley County Sheriff's Deputy Christian testified that:

a. He was dispatched on March 23, 2005, to Berkeley Heights in Berkeley County for a report that gunshots were fired [Id., 119-120.]

b. Upon arrival, he observed two persons were frantic in the parking lot and the victim lying on the ground in the parking lot. [Id., 120-121.]

c. The two people from the parking lot pointed to the Petitioner as the shooter [Id., 122.]

d. The Petitioner was then detained at the door of the apartment and a cursory search of the apartment was conducted for persons armed before waiting for a search warrant. [Id., 122-123.]

e. The victim as identified as Arthur Doakes. [Id., 123.]

f. He observed no weapons lying on the scene. [Id., 124.]

7. At trial, Berkeley County Sheriff's Deputy Henderson testified that:

a. He was dispatched on March 23, 2005, to Berkeley Heights in Berkeley County for a report that gunshots were fired. [Id., 130.]

b. Deputies McCulley and Christian were present. [Id., 131.]

c. He secured the Petitioner in a doorway and put him in a police vehicle. [Id., 133.]

d. He did not find any weapons in the vicinity. [Id., 134.]

e. Berkeley County Sheriff's Captain Bohrer and Corporal Hall were investigating. [Id., 134-135.]

2

8. Berkeley County Sheriff's Corporal McCulley testified that:

  a. He was dispatched on March 23, 2005, to Berkeley Heights in Berkeley County for a report of shots fired. [Id., 138-139.]

  b. Many officers responded because of the reports of shots fired, a man down, and the shooter still on the premises. [Id., 139-140.]

  c. He met a male and female in the parking lot who said they were acquaintances of the deceased. [Id., 140-141.]

  d. He detained the Petitioner, whom he believed was arrested at that time. [Id., 141.]

  e. He advised the Petitioner of *Miranda*, which the Petitioner said he understood, he asked the Petitioner general questions of knowledge and then the Petitioner stopped talking but would nod his head yes or no in response to questions. There was no extensive questioning done. [Id., 142.]

  f. There were no firearms found. [Id., 143.]

9. Wendell Turner testified that:

  a. He is an inmate. [Id., 145-146.]

  b. On March 23, 2005, he was drinking with Arthur Doakes and Cheri Marchesani, in Doakes' pickup. [Id., 147-149.]

  c. They went to Baker Heights, but he didn't know why. [Id., 150.]

  d. Doakes went to the Petitioner's door and knocked. He heard Doakes holler through the door "I am not scared of your gun." Doakes tied his shoe. Five or ten minutes later, Doakes was still standing there when the Petitioner came outside with a gun and shot Doakes. [Id., 150-151.]

  e. Doakes did not say anything when he was shot. He saw Doakes shot and saw him fall into the street. [Id., 151.]

  f. The Petitioner came over and shot him twice more. [Id.,152.]

  g. Doakes did not go in the Petitioner's apartment, did not break a window or door or kick or throw anything. [Id., 153.]

  h. It was a long barrel gun that he had never seen before. [Id., 154.]

  i. He ran to a trailer park to call for help. [Id., 154-155.]

  j. Doakes was backing up when the Petitioner came out. [Id., 155-156.]

  k. He [Turner] had no weapon and Doakes never displayed a weapon. [Id., 157.]

3

10. Berkeley County Sheriff's Lieutenant Gary Harmison testified that:

    a. He was dispatched on March 23, 2005, to Berkeley Heights in Berkely County for shots fired. [Id., 160.]

    b. He checked the victim for pulse and if he was breathing. The victim was not alive. The victim was identified as Arthur Doakes. He saw two holes in Doakes' shirt and blood. [Id., 160-161.]

    c. He saw no weapons. [Id., 161.]

    d. He checked the apartment to be sure there were no other victims or firearms and contacted Captain Bohrer to obtain a search warrant. [Id., 162.]

    e. He identified a Crime Scene Diagram. [State's Exhibit 1.] [Id., 164.]

    f. He entered Apartment 4, which is identified as the Petitioner's. [Id., 165.]

    g. A large wad of cash was found outside the door and photographed. [State's Exhibit 2.] [Id.,165-166.]

    h. He identified .22 caliber spent casings found at the scene. [State's Exhibit 3-6.] [Id., 167-169.]

    i. The distance from the victim to Apartment 4's door was 17' 1-1/2". He identified a photo of the view from the victim to the door. [State's Exhibit 7.] [Id., 170-171.]

    j. He identified a photo of the victim and the victim's pickup. [State's Exhibit 8.] [Id., 171-172.]

    k. No weapon was found when he searched the apartment with a search warrant. [Id., 174.]

    l. He found a firearm at Apartment 22, Daryl Bradley's apartment, and gave the firearm to Corporal Hall. [Id., 175.]

    m. He identified the gun seized and three shell casings then recovered. [St Exh 9-12.] [Id., 175-177.]

    n. The gun recovered was loaded, in a case, and wrapped in a brown grocery bag under Mr. Bradley's mattress. [Id., 176.]

    o. The gun and casings are of the same caliber: .22. [Id., 177.]

11. State's Exhibits 1-12 were admitted without objection. [Id., 173, 178.]

12. Cheri Marchesani testified that:

    a. She was with Arthur Doakes and Wendell Turner on March 23, 2005. [Id.,

4

180.]

b. They went to Baker Heights to the Petitioner's whom she knew from NA. [Id., 182.]

c. She had been there before to purchase crack cocaine. [Id., 183.]

d. They went to the Petitioner's apartment. [Id., 183.]

e. Doakes went because he was owed money or wanted cocaine. She was there to get high. [Id., 183-184.]

f. An argument ensued. Doakes said something to the effect of "I am not worried about your effing pistol." [Id., 183-185.]

g. Doakes tied his shoe. [Id., 185.]

h. She heard a pop and saw Doakes fall back and then the Petitioner stood over Doakes and she heard more pops and saw fire coming out of the gun. [Id., 186.]

i. She identified the Petitioner. [Id.,186.]

j. She never saw any weapon on Doakes that night. [Id., 186-187.]

k. She saw the Petitioner outside his apartment. [Id., 188.]

l. She did not see Doakes go into the apartment. [Id., 190.]

m. She had been in the apartment before to buy drugs. [Id., 190-191.]

n. They were there to buy drugs that night. [Id., 191.]

13. Nabil Haikel, Medical Examiner, was qualified as an expert and testified to a description of the autopsy of Doakes and that the gunshot wounds were all contemporaneous. There were three gunshot wounds and a possible fourth graze. Gunshots 1 and 2 each could be fatal. The cause of death was multiple gunshot wounds, not self-inflicted. [Id, 197-206.]

14. Berkeley County Sheriff's Captain Bohrer testified that:

a. He was dispatched on March 23, 2005, to Berkeley Heights in Berkeley County for shots fired and he was the lead investigator on the case. [Id., 207-208.]

b. A search warrant was obtained, which he identified and which was admitted into evidence without objection. [State's Exhibit 13.] [Id., 209-210.]

c. He searched the Petitioner's apartment where no weapon was found but some ammunition was seized. [Id., 210-211.]

d. He identified a box of .22 caliber ammo that was seized and a photo of the

5

ammo as well as a photo of a box of .38 caliber ammo, which were admitted without objection. [State's Exhibits 14-16.] [Id., 211-213.]

e. The Petitioner was identified as a witness and/or suspect so was taken back to the office, where he was advised of *Miranda*. The Petitioner did not ask for an attorney and said he would speak with the officers but would not allow a videotape of the conversation. [Id., 215-217.]

f. The Petitioner admitted that he shot the man. [Id., 218-219.]

g. When asked about the gun, the Petitioner would not say where it was but said it was safe. [Id., 219.]

h. The Petitioner could not identify the victim except to call him the "junk yard man." [Id., 218, 219.]

i. The Petitioner said there were people knocking on his door and harassing him. [Id., 220.]

j. He administered a gunshot residue test on the Petitioner and the layman result came back positive. [Id., 222.]

k. The Petitioner never said that the victim was in his home or broke a door or a window. [Id., 222-223.]

l. He ascertained that the victim previously worked at a junkyard or salvage yard so presumed that is why the Peittioner referred to him as "junk yard man." [Id., 224.]

m. He identified the Petitioner. [Id., 225-226.]

15. Philip Cochran of the State Police Lab was qualified as an expert as a firearm tool mark examiner and testified that:

a. He identified State's Exhibit 9 as a .22 caliber semi-automatic pistol. [Id., 241-243.]

b. In his opinion, there was nothing wrong with the weapon or any indication that the weapon would fire by itself. [Id., 243.]

c. In his opinion, tests of the fired cartridges identified as State's Exhibits 10-12 were fired from this weapon. [Id., 245-247.]

16. Berkeley County Sheriff's Corporal Hall testified that:

a. He was dispatched on March 23, 2005, to Berkeley Heights in Berkeley County on a report of shots fired. [Id., 248-249.]

b. On the scene he collected .22 caliber shell casings and some United States currency outside the apartment and a box of .22 caliber bullets inside the apartment. [Id., 250.]

6

c. The Petitioner was considered a suspect and he interviewed the Petitioner with Captain Bohrer since witnesses identified the Petitioner as the shooter. [Id., 251.]

d. The Petitioner agreed to talk but would not allow it to be taped or written down. [Id., 252.]

e. The Petitioner said he didn't know the victim, but then said that the victim had been coming with others to buy drugs. [Id., 253.]

f. The Petitioner never said that the victim was in his apartment or broke a door or a window. [Id., 253.]

g. The Petitioner said he was frightened. [Id., 253-254.]

h. The Petitioner said he was ill and on antibiotics. [Id., 254.]

i. The Petitioner admitted to the shooting. [Id., 255.]

j. The Petitioner was processed after questioning. [Id., 256.]

k. They didn't ask any more questions after the Petitioner asked for an attorney. [Id., 257.]

17. On the second day of trial, Marina Hostler testified that:

a. She was a friend of the Petitioner, living at his apartment on March 23, 2005. [Tr., 2/8/06, 35.]

b. That night she heard yelling outside and banging on the door. The Petitioner got a gun and said he was going to shoot [the person outside the door] and opened the door. She heard a shot and then heard two more shots. [Id., 36-37.]

c. The person outside was saying he wanted drugs. [Id., 37.]

d. The Petitioner had drugs in his house before. She has taken drugs there. [Id.]

e. She saw the Petitioner with the gun and had seen the gun in the residence before. [Id., 37.]

f. There was no broken glass or door. [Id., 38.]

g. She saw the Petitioner go to the door and open it and then heard shots. [Id., 38.]

h. She left after it happened and turned herself in the next day. [Id., 39-40.]

i. On cross-examination, she testified that she attended NA/AA with the Petitioner and that he had not sold drugs for three days. [Id., 46, 50.]

18. The State rested and the Court denied the Petitioner's motion for acquittal. [Id., 51-

53.]

19. The Court had the *Neumann* dialogue with the Petitioner, after which the Petitioner informed the Court that it was his choice not to testify. [Id., 54-56.]

20. The Petitioner called Stephen Anderson as a witness. Mr. Anderson testified that he is a police officer for the Veteran's Administration, which property in Martinsburg is beside the apartment complex where the shooting occurred. He described actions he took to secure the perimeter of the VA grounds and how he was flagged down to go to the scene of the shooting. He was the first law enforcement officer to arrive. When asked if the Petitioner indicated he was afraid, Anderson testified that if being told not to move and get on the ground would make one frightful then, yes, he might have been afraid. [Id., 56-71.]

21. The defense rested. [Id., 71.]

22. Instructions were discussed between the circuit court and counsel, with the Petitioner present. Amongst those discussed were:

> a. The First Degree Murder instruction was given. [Id., 83-84, 104-107.]
>
> b. The Second Degree Murder instruction was given. [Id., 107.]
>
> c. An instruction for Voluntary Manslaughter was given. [Id., 78-81, 107-108.]
>
> d. An instruction for involuntary manslaughter was neither asked for nor supported by the evidence and was not given. [Id., 78.]
>
> e. Both sides offered the same inferred malice instruction, which was given. [Id., 83, 108.]
>
> f. A discussion of the Petitioner's self-defense instruction was had, with the State objecting as unsupported by the evidence. The circuit court initially indicated that it would not give the instruction, but ultimately did. [Id., 93-96, 100, 111-112.]

23. The trial court instructed the jury accordingly. [Instructions, 2/8/06.]

24. The jury returned a verdict of guilty with no recommendation of mercy. The circuit court immediately imposed the sentence of life without possibility of parole, without necessity of having a Pre-sentence Investigation Report prepared. [Conviction and Sentencing Order, 2/10/06; Tr. 2/8/06.] (A resentencing order was entered on October 4, 2006, for the purpose of extending

8

the time frame for appeal. [Agreed Order of Conviction and Resentencing upon a Trial by Jury, 10/4/06.])

B. The Direct Appeal.

1. The Petitioner's direct appeal from the murder conviction raised the following issues: 1) Improperly Admitted 404(b) Evidence; B) Improper Prosecutor Comment; C) Improper Jury Instruction; D) Improper Admission of State's Evidence; E) Prompt Presentment Violation; and F) Cumulative Effect. [Petition for Appeal, 10/11/06.]

2. The Petition for Appeal was refused by the West Virginia Supreme Court of Appeals. [Order, 2/27/07.]

C. The Habeas, SER Walker v. Ballard, Case No.: 07-C-1139.

1. The Petitioner filed a *pro se* Petition for Habeas Corpus. [Petition, 10/18/07, Case No.: 07-C-1139.]

2. With the assistance of counsel, the Petitioner filed an Amended Petition for Writ of Habeas Corpus, alleging the following grounds: A) Ineffective Assistance of Counsel; B) Sentence in Violation of 8th Amendment; C) False Testimony by State Witnesses; D) Insufficient Evidence; E) Competency to Stand Trial; F) Improper Mercy Instruction; G) Lack of Mandatory Appellate Review; H) Miscellaneous Other Grounds. [Amended Petition, 7/8/10.]

3. The Petitioner also filed a *Losh* list. [Checklist of Grounds, 7/8/10].

4. The Court Respondent filed a return to the Petition, asking the Court to deny all claims. [Respondent's Return to Petition, 12/15/10.]

5. The Court conducted an evidentiary hearing where it heard evidence from the Petitioner and his former trial counsel, Heidi Silver (then Myers). [Tr. 11/14/11.]

6. The Petitioner testified that he was waiving all issues that he previously marked as waived on his filed *Losh* list. [Id., 6-11, 20.] He also withdrew his allegations of Improper Mercy Instruction and Lack of Mandatory Appellate Review. [Id., 14, 24-25.] He further withdrew the allegations regarding the sufficiency of the indictment. [Id., 26.] The Petitioner

9

acknowledged his understanding that he needed to raise all claims and that any not raised would be waived. [Id., 7, 10, 20.]

7. The Petitioner testified regarding the remaining allegations as follows.

a. He came to the VA [Veterans Administration] Hospital for detoxing and has not picked up no drug or drink since September 28, 1995. [Id., 39.] He received a degree in substance abuse counseling from the VA. [Is., 40-41.] He lived at the VA before moving into his own place about ten years before the March 2005 incident. [Id., 40-41.] He worked for that one bedroom apartment, which just had one door. [Id., 43.] There was no jury view. [Id., 43-44.]

b. Heidi Myers was his appointed lawyer. [Id., 44-45.] She came to visit him twice in jail and people that worked for her came two other times. [Id., 45-46.] He understood that he waived attorney-client privilege by testifying at this hearing. [Id., 46-49.] When Myers visited him, she stayed for hours. [Id., 49.] He did not have any witnesses he wanted to testify at trial so he gave Myers no names to investigate. [Id., 49-50.] Myers did not do nothing, she should have gone to the crime scene and talked to the sheriff and people. [Id., 50-51.] Myers did not make him any promises. [Id., 51.] Myers was going through something with the Prosecuting Attorney. [Id., 53.]

c. He did not testify at his trial but the judge told him he had choice [to testify]. [Id., 18, 54.] He was convicted of the crime of murder which he owned up to but did not admit to. [Id., 54, 55.] He did not recall Myers telling him the difference between mercy and no mercy, but the judge explained it at trial. [Id., 55-56.] He would have testified at trial. [Id., 56.] He was standing with the anonymity of Alcoholics Anonymous and Narcotics Anonymous but was surprised that no one was called as a character witness. [Id., 56.] The investigators didn't do too much of nothing. [Id., 57.] He spoke with the police voluntarily, but the statement was not recorded, so he does not believe that the police testimony about that statement was correct. [Id., 58.] The statement was not suppressed. [Id., 58-59.]

d. Myers had him evaluated for competency. [Id., 59.] No one spoke with him about a mental defense. [Id., 60.] He believes the State witnesses did not tell the truth because they had

10

been with the decedent and were incarcerated. [Id., 60-61.]

e. He never knew or saw the victim before March 23, 2005 [killing]. [Id., 61.] The first time he met the victim, who called himself the junkyard man, was at his house some time before the murder on March 23, 2005. [Id., 61-62.] It was at 5:30 one morning and the victim banged on his door, sweaty and with no shirt, looking crazy and angry, and said he was the junkyard man, and that startled [the Petitioner.] The victim stuck his foot in the door. [The Petitioner] had a gun in his hand and told the victim to leave. He showed the gun to the victim. [Id., 62-64.] He was not going to run out of his own apartment. [Id., 64-65.] He called the police but no evidence was entered at trial. [Id., 65-66.] The second time he called the police. [Id.] The second time a loud truck shone lights into the bedroom, and [the Petitioner] sat in bed for an hour or two, scared, and then crawled under his bed and called the police. The person in the truck beat on the window and called [the Petitioner's] name. It was 11 or 12 at night. [Id., 67-68, 69.] He called the police but no evidence was entered at trial. [Id., 70.]

f. The night of the murder, he was home with a toothache and in pain and took an antibiotic. [Id., 70-71.] [The victim] and two other people came and banged on the door. [[Id., 71.] [The victim] went back to his truck and then came to the door, [the Petitioner] took his gun, opened the door, went out, and shot [the victim]. [Id., 72.] [The victim] called him out and cussed him out. [Id.] He wasn't going to let nobody take nothing from me that he worked for. [Id., 73.] Myers knew the Petitioner was in a mental hospital before moving to Martinsburg. He did not pick up a drug or drink since September 28, 1995. He worked hard for my apartment. He is sorry he took a life. [Id., 74-76.]

g. He knew my life was in danger because he heard afterwards that [the victim] was a bully, a gansta. He did not want to kill [the victim.] [Id., 76.] There was no evidence about the victim at trial. [Id., 77.] He believed there were other people out there [at his apartment building] but it was pitch dark. [Id.] He kept shooting the victim although the victim did not know him. He was sorry. [Id., 78.] He had no forensic expert. Ms. Myers did not do much. [Id.]

11

8. On cross-examination, the Petitioner testified as follows.

a. His history of drug addiction led him to Western State Hospital in Virginia and then to the VA for three years before moving into his apartment in 1996. [Id., 82-83.] He is not diagnosed with any mental illness or taking any medications for mental illness. [Id., 83.] The Public Defender represented him on the murder charge before Myers. [Id., 84.] Myers would meet him for hours when she visited. [Id., 86.] Myers came two or three times, once with a psychologist, plus her investigators came out a couple of times. [Id., 87-89.] Myers was appointed after the indictment in October 2005, and trial was four months later in February 2006. [Id., 88.] He discussed with Myers what happened the night of the shooting. [Id., 89.] He did not have any other witnesses to give to Myers. [Id.] He had few associates and no family. [Id., 90.] He had nobody to call as a witness. [Id., 91.] Myers made no promises but he heard she was a good lawyer. [Id., 91-92.] He never denied that he shot Doakes and is not denying it. [Id., 92.] The defense was self-defense. [Id.] The jury went off what the Prosecuting Attorney told them. [Id., 93.] There was testimony from Marina Hostler about drugs in his apartment, but he was just helping her get clean and gave her street drug methadone pills that he bought without a prescription. [Id., 95-96.] Hostler testified that [the Petitioner] sold drugs three days before the shooting, but he denies that he did. [Id., 96.] Myers and the Prosecuting Attorney were not on good terms, but he could not say that it affected his case. [Id., 97-98.]

b. The trial judge told him that he had a choice to testify regardless of his lawyer's advice and he told the trial judge that he would not testify. [Id., 98-99.] He was told by the Prosecuting Attorney that the victim was known as the junkyard man, but he did not know this man a day in his life. [Id., 99.] The victim came to [the Petitioner's] apartment twice before the shooting, but he did not know him. The first time, a couple of years before the shooting, [the Petitioner] showed him his gun, which is a different gun than was used in the shooting. This first gun was later stolen so he replaced it a year or two later. [Id., 100-101.] He did not see the victim the second time the victim came to the Petitioner's home, but knew it was him from the sound of the

truck. [Id., 101-102.] The first time the victim came to his home, the victim walked. [Id., 102-103.] He did not know the name of Arthur Doakes until he saw it on the indictment. [Id., 104.] There was testimony that Doakes worked at a junkyard. [Id.] He volunteered to give a statement to the police. [Id., 105.] He told the police that he felt threatened by this guy because of the guy's size, the way he was sweating, and how crazy he looked. [Id., 106.] He was protecting himself. [Id., 106-107.] A psychologist came to see him, maybe several times. [Id., 107-108.] He has memory loss and PTSD but has never been diagnosed with those things. [Id., 108-109.] He could not identify anything that he believed was false about any witness' testimony. [Id., 110.] He confessed to the murder. [Id., 111.] He hid the gun after the shooting. [Id.]

c. No one was with him that could corroborate his story that Doakes came to his home before [the night of the shooting]. [Id., 111-112.] He had not seen a doctor for his tooth but was taking pain pills, which he later said were antibiotics. [Id., 112-113.] Doakes was walking towards his door when he stepped out and shot Doakes three or four times. [Id., 1113-114.] The gun did not go off accidentally. [Id., 114.] He shot Doakes while Doakes was lying on the ground after he shot him the first time. [Id., 115-116.]

9. The Respondent called Heidi Silver, who testified as follows.

a. Her name was Heidi Myers previously. She represented the Petitioner in his murder case. She is not currently practicing law, having lost her license and having been convicted of criminal offenses surrounding her billing practices with the Public Defender Services. There have never been any allegations against her about the quality of her representation of clients during that time. [Id., 118-119.] She was appointed to represent the Petitioner at some time after the preliminary hearing. [Id., 121-122.] The theory of the case was self-defense, based on the Petitioner's information that Doakes came to his house because Doakes thought the Petitioner was involved with drugs and the Petitioner was fearful. [Id., 122-123.] The Petitioner admitted he shot Doakes and there were eyewitnesses, so there was no challenge to whether the Petitioner was the shooter. [Id., 123-124.]

13

b.  She met with the Petitioner at the jail and had three paralegals and two investigators working on the Petitioner's case. [Id., 124.] They did background checks on the witnesses, canvassed the neighborhood, spoke with witnesses, and followed up with any information that the Petitioner provided.  [Id., 124-125.] They found nothing beneficial; the information found that was not helpful was neither disclosed to the State nor used at trial. [Id., 125.] She has no recollection of the Petitioner providing her with any witness names other than a girlfriend who was at the apartment with him that night, Marina Hostler, and they found no other witnesses. [Id., 125-128.] She was expecting Ms. Hostler to testify that Ms. Hostler and the Petitioner were scared for their lives and they had no involvement with drugs, but Ms. Hostler testified for the State that she was using drugs in the Petitioner's apartment. [Id., 126-128.] She was able to use the Petitioner's statement to the police as a means to get before the jury that the Petitioner told police that he was sick and fearful the night of the shooting. [Id., 128-130.] She was unable to corroborate through investigation the Petitioner's assertion that he was being prosecuted only because Doakes was an informant. [Id., 129-130.] She reviewed all the discovery with the Petitioner. [Id., 130-131.] The State's evidence that Doakes came to the Petitioner's to buy drugs fit into the self-defense theory since it explained why the Petitioner was fearful of Doakes. [Id., 131-134.]

c.  She cross-examined the State's witness, Cheri Marchesani, about drug use the morning of trial to undermine Marchesani's credibility. [Id., 132-133.] The Petitioner chose not to testify at trial, after discussion about his right, but she advised him it would not be in his best interest to testify. [Id., 134-135.] She had the Petitioner evaluated by a psychologist, Dr. Lewis, for competency and criminal responsibility, but the Petitioner was found competent and had no diminished capacity or mental health defense.  [Id., 135-138.] The State refused every plea attempt she made. [Id., 138-139.] She recalled nothing objectionable in the State's opening, and her own opening informed the jury that the Petitioner shot Doakes in self-defense. [Id., 140-141.]

14

d. She asked police officers about carrying guns to demonstrate that simply having a gun does not imply a murderous intent, and as an attempt to reach an issue of a VA officer working out of his jurisdiction that the trial court previously excluded. [Id., 141-142.] Doakes' death was not in question, so she did not cross examine the medical examiner. [Id., 142-143.] Her investigation into Doakes indicated that he worked at a junkyard. [Id., 144.] Her closing argument focused on the credibility of the State's witnesses and that the Petitioner was afraid for his life. [Id., 144-145.] As to sentencing, she explained to the Petitioner the difference between mercy and no mercy, the Petitioner provided no names for character witnesses, she had no evidence for a mercy argument or for bifurcation in this self-defense case. [Id., 145-146.] The Petitioner's military background provided no defense, nor was there any indication that a motion for venue change should have been filed. [Id., 147.] No firearms or ballistics expert was necessary because the defense was self-defense not an accidental shooting. [Id., 147-148.] Her relationship with the Prosecuting Attorney was adversarial. [Id., 148-149.] She has no recollection about grand jury minutes. [Id., 149.]

10. On cross-examination, Ms. Silver testified.

a. She has not reviewed her file of the Petitioner's case because it was seized by the federal government. One of the billing payments she was investigated for was the Petitioner's case. She does not recall whether she pleaded to a count involving the Petitioner. She was convicted of contempt and two felonies and is currently on probation. [Id., 151-152.]

b. In the Petitioner's case, she does not recall whether 911 calls were investigated but her investigators canvassed the area where the Petitioner lived and interviewed everyone produced in discovery. She did not object to the State's intrinsic drug evidence since she wanted to show that the Petitioner was fearful for his life because he used to be involved with drugs but was no longer. [Id., 153-157.] She does not know why the Prosecuting Attorney wanted her removed from the case and felt that she did not need co-counsel because she had the case under control. [Id., 157-160.] She did not explore bifurcation for mercy because this was a self-defense case.

15

Her investigators tried to contact a sister or an aunt. [Id., 160-162.] She reiterated her reasons for asking police officers why they carried weapons. [Id., 162-164.] Her strategy in not suppressing the Petitioner's statement was it provided evidence that he was scared without having the Petitioner testify. [Id., 164-166.]

11. On re-direct, Ms. Silver testified that she went over the indictment with the Petitioner, that she felt the Petitioner had a better shot with twelve jurors than just pleading straight up to the murder indictment, that the State's evidence regarding Doakes going to the Petitioner's to buy drugs the night of the shooting was intrinsic evidence, that the court never appointed co-counsel, three shots to kill Doakes was not going to be helpful for any mercy argument, and the record shows that a self-defense instruction was given to the jury. [Id., 174-179.]

12. The Court finds that both the Petitioner and Ms. Silver have been convicted of felony offenses but that each of the witnesses were sincere in their testimony. The Court further finds that, while Ms. Silver's criminal convictions were related to improper billing practices during a time in which she represented the Petitioner in his underlying criminal case, there is no evidence that those convictions *per se* undermine her performance as the Petitioner's trial counsel or otherwise lead the Court to believe that she was not credible in her testimony.

**CONCLUSIONS OF LAW.**

1. A habeas corpus procedure is "civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case." State ex rel. Harrison v. Coiner, 154 W.Va. 467, 176 S.E.2d 677 (1970); **W. Va. Code** § 53-4A-1(a).

2. A convicted criminal has the right to one omnibus post-conviction habeas proceeding. Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606, 609 (1981).

3. "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed. Syl. Pt. 4, State ex rel. McMannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 805 (1979), *cert. den.*, 464 U.S. 831, 104 S.Ct.

16

110, 78 L.Ed.2d 112 (1983)." Syl. Pt. 9, State ex rel. Kitchen v. Painter, 226 W.Va. 278, 700 S.E.2d 489 (2010); Syl. Pt. 9, State ex rel. Azeez v. Mangum, 195 W. Va. 163, 465 S.E.2d 163 (1995); Syl. Pt., State ex rel. Phillips v. Legursky, 187 W. Va. 607, 420 S.E.2d 743 (1992).

4. "There is a strong presumption in favor of the regularity of court proceedings and the burden is on the person who alleges irregularity to show affirmatively that such irregularity existed." Syl. Pt. 2, State ex rel. Scott v. Boles, 150 W. Va. 453, 147 S.E.2d 486 (1966); State ex rel. Massey v. Boles, 149 W. Va. 292, 140 S.E.2d 608 (1965); Syl. Pt. 1, State ex rel. Ashworth v. Boles, 148 W. Va. 13, 132 S.E.2d 634 (1963).

5. Due to this strong presumption of regularity, statutory law requires that a petition for writ of habeas corpus ad subjiciendum shall "specifically set forth the contention or contentions and grounds in fact or law in support thereof upon which the petition is based[.]" **W. Va. Code** § 53-4A-2. The reviewing court shall refuse, by written order, to grant a writ of habeas corpus if the petition, along with the record from the proceeding resulting in the conviction and the record from any proceeding wherein the petitioner sought relief from the conviction show that the petitioner is entitled to no relief or that the contentions have been previously adjudicated or waived. **W. Va. Code** § 53-4A-3(a), -7(a); State ex rel. Markley v. Coleman, 215 W.Va. 729, 601 S.E.2d 49, 54 (2004); Perdue v. Coiner, 156 W.Va. 467, 469-470, 194 S.E.2d 657, 659 (1979).

6. In order to prevail on an issue previously adjudicated during the criminal proceeding, the petitioner must prove that the trial court's ruling is "clearly wrong". **W. Va. Code** § 53-4A-1(b).

7. Grounds not raised by a petitioner in his petition are waived. Losh v. McKenzie, 166 W. Va. 762, 277 S.E.2d 606, 612 (1981); *see also*: State ex rel. Farmer v. Trent, 206 W. Va. 231, 523 S.E.2d 547 (1999), at 550, n. 9.

8. Any ground that a habeas petitioner could have raised on direct appeal, but did not, is presumed waived. Syl. Pts. 1 & 2, Ford v. Coiner, 156 W. Va. 362, 196 S.E.2d 91 (1972).

17

9. The reviewing court has a mandatory statutory duty to enter an order denying the relief requested in a habeas petition if the record demonstrates that a habeas petitioner is entitled to no relief. **W. Va. Code** § 53-4A-7(a); *see also* **W. Va. Code** § 53-4A-3(a) and Perdue v. Coiner, 156 W.Va. 467, 469-470, 194 S.E.2d 657, 659 (1979). **W. Va. Code** § 53-4A-1, *et seq.*, "contemplates the exercise of discretion by the court", authorizing even the denial of a writ without hearing or the appointment of counsel. Perdue v. Coiner, *supra*.

10. When denying or granting relief in a habeas corpus proceeding, the court must make specific findings of fact and conclusions of law relating to each contention raised by the petitioner. State ex rel. Watson v. Hill, 200 W. Va. 201, 488 S.E.2d 476 (1997).

**Ineffective Assistance of Counsel.**

11. The West Virginia Supreme Court of Appeals recently reiterated the standards necessary to prove ineffective assistance claims:

> 1. "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus Point 5, State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995).

> 2. "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syllabus Point 6, State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995).

> 3. "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syllabus Point 21, State v. Thomas, 157 W.Va. 640, 203 S.E.2d 445 (1974).

> 4. "One who charges on appeal that his trial counsel was

18

> ineffective and that such resulted in his conviction, must prove the allegation by a preponderance of the evidence." Syllabus Point 22, State v. Thomas, 157 W.Va. 640, 203 S.E.2d 445 (1974).

Syl. Pts. 1-4, State ex rel. Kitchen v. Painter, *supra*, 226 W.Va. 278, 700 S.E.2d 489.

12. Allegation of Failure to Investigate Case.

At trial, the Petitioner's theory of defense was self-defense. "'Ordinarily, self-defense is not available to the aggressor in an affray who precipitates it without legal justification.' State v. Watson, 164 W.Va. 642, 651, 264 S.E.2d 628, 633 (1980)", *cited in* State ex rel. Kitchen v. Painter, *supra*, 700 S.E.2d 489, 498. Self-defense is the theory that the Petition pursued during trial and pursues as his primary defense in this habeas. The Petitioner admitted that he shot Doakes, and admitted so before this Court, but asserted that he was legally justified. The State called eleven witnesses at trial, each of which was subject to cross-examination by the defense. The Petitioner chose not to testify but called one witness.

The Petitioner asserts in this habeas that no one interviewed other witnesses. The Petitioner did not identify who any of these witnesses might be or what relevancy they may have had. Ms. Silver testified that the Petitioner identified no witnesses for her and her investigation revealed no helpful witnesses.

The Petitioner asserts that Doakes "was known by individuals that lived in and around Roynal Walker as a 'gangsta' and the 'trash collector.'" The Petitioner did not identify who any of these individuals are. The Petitioner testified before this Court that he did not know Doakes. At trial, the jury heard that the Petitioner told police that he knew Doakes as the "junk yard man." [Tr. 2/7/06, 218, 219.] But the jury also heard that Doakes used to work at a junk yard or salvage yard. [Id.] Trial testimony established that Doakes was unarmed and posed no threat to the Petitioner. Trial testimony established that the Petitioner made no effort to get Doakes to go away before opening the door and shooting him. Trial testimony established that, after disabling Doakes with the first shot, the Petitioner stood over him and shot him twice more. The Petitioner offers no factual basis that there ever were any other witnesses for trial counsel to interview that

19

would have provided testimony that would have led the jury to acquit the Petitioner of murder.

The Petitioner asserts that he was sick the night he killed Doakes. This is a fact that was before the jury as the Petitioner's statement to the police that was testified to at trial was that the Petitioner stated that he was ill and taking antibiotics for the illness. Ms. Silver testified that psychologist Dr. Lewis opined that the Petitioner was competent to stand trial and had neither a diminished capacity or mental health defense available to him.

The Petitioner provided no evidence that Doakes was a confidential informant or, if he were, that it affected the Petitioner's prosecution. Ms. Silver found no evidence to support such a theory at trial.

The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra.*

13. Allegation of failure to prepare case and file proper pleadings.

Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2. The Petitioner's allegations are that trial counsel did not participate in a discovery conference before a January 2006 status hearing and did not file an affirmative defense of mental defense or self defense. The record, however, reflects that a discovery conference was had between the State and trial counsel. [Pre-trial Hearing Order, 2/7/06.] Ms. Silver testified that she reviewed all discovery with the Petitioner. The record reflects that the Petitioner pursued a defense of self-defense and the jury was instructed on self-defense. The Petitioner cites to no legal principle that requires a criminal defendant to file a notice of self-defense. The Petitioner provides no factual basis that he suffered any mental health condition of which trial counsel was aware that would have provided a sustainable alternative theory of defense which would have led the jury to acquit him of the charge of murder or find him guilty of one of the lesser offenses of which the jury was instructed. Ms. Silver testified that none was found.

The Petitioner fails to allege any set of facts that would meet either prong of the two-

20

prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra.*

14. Allegations concerning performance at trial and pretrial.

a. Proper admission of intrinsic evidence.

Whether "other bad acts" evidence is subject to analysis under **W.V.R.E.** 404(b) turns on whether the evidence is "intrinsic" or "extrinsic" to the charged crime. Intrinsic evidence is admissible independent of 404(b) analysis and is admissible over a **W.V.R.E.** 403 objection. *See* State v. LaRock, 196 W.Va. 294, 313, 470 S.E.2d 613, 632 (1996). *See also* State v. Cyrus, 222 W.Va. 214, 664 S.E.2d 99 (2008).

At the January 27, 2006, pre-trial hearing, the trial court considered the State's **W.V.R.E.** 404(b) motion. The Petitioner had no objection to the State admitting: the Petitioner's own oral statement to police that he has not sold drugs for nine years; the intrinsic evidence from Cheri Marchesani, Wendell Turner and Marina Hostler, who were all present at the scene of the killing, that the deceased was present at the Petitioner's apartment that night to obtain drugs or money; and a statement from a witness that the Petitioner has been sober but has been known to use drugs and sell in the past. [Tr., 1/27/06, 8-11.] This evidence was all intrinsic to the crime of murder because it was the reason that Doakes went to the Petitioner's apartment the night that the Petitioner shot and killed him. LaRock, *supra.* Trial counsel had no proper legal objection to the evidence coming in as intrinsic evidence. The trial court found that the evidence was intrinsic. [Pre-trial Hearing Order, 2/7/06.] The Supreme Court refused the direct appeal, which raised the admissibility of this evidence.

Ms. Silver testified that the defense strategy to allow this evidence of why Doakes and his associates were at the Petitioner's apartment would further the Petitioner's theory of self-defense. The Petitioner's testimony before this Court makes plain that he believes that Doakes' actions were the basis for his self-defense argument. In his verified habeas Petition, the Petitioner asserts that "When Cheri Marchesani, Wendell Turner, and Arthur Doakes approached Petitioner's

21

home on the night in question, they knew they were going to kill him or rob him. Fortunately, Petitioner was prepared for their attack and properly and legally defended himself." [Petition, 17.] The Petitioner never offered any objective evidence to this Court as to why he thought he would be robbed or killed, but made clear by his testimony that he had a subjective fear that was the basis of his self-defense argument.

Consistent with the pre-trial ruling, the Petitioner did not object to Marchesani's testimony about seeking drugs from the Petitioner the night the Petitioner killed Doakes or that she had been at the Petitioner's once before for drugs. [Tr. 2/7/06, 183-184, 190-191.] The record, and Ms. Silver's testimony, establish that she worked to impeach Ms. Marchesani's credibility on cross-examination, eliciting that Marchesani used crack cocaine just the night before her trial testimony, questioning whether she may still be under the influence, and pushing Marchesani's limited memory of times she claimed to have been at the Petitioner's residence. [Id., 192-194.]

The testimony was unobjectionable as intrinsic evidence. LaRock, *supra*. Given the overwhelming weight of the evidence proving the Petitioner murdered Doakes, Marchesani's brief reference on the State's direct and the Petitioner's cross to having once previously purchased a small piece of crack from the Petitioner cannot be said to have affected the jury's verdict.

### b. Allegation about plea offer.

Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2. The Petitioner cites neither fact nor legal authority for his proposition that trial counsel should have obtained a better plea agreement. Ms. Silver testified that she tried to work the case out with the State but the best offer she got was to plead straight up to the single count of first degree murder and argue sentencing. She testified that they decided to take their chances with the twelve-person jury. The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

22

c. Allegation about suppression of Petitioner's statement.

The West Virginia Supreme Court holds that:

> "The following must be raised prior to trial: ... (3) Motions to suppress evidence unless the grounds are not known to the defendant prior to trial ..." Part, Rule 12(b), West Virginia Rules of Criminal Procedure.

Syl. Pt. 1, State v. Strock, 201 W.Va. 190, 495 S.E.2d 561 (1997).

The Petitioner never moved to suppress his statements. In a similar situation in Strock, the Supreme Court concluded that "The Court believes that the appellant, by failing to move to suppress the statements in issue, of which he was well aware, prior to trial, effectively waived his right to challenge their admission into evidence. See *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995)."

The record of the Petitioner's trial demonstrates that the Petitioner was well aware of the oral statements he gave to the police following *Miranda* waivers, as they had been provided in discovery, and that he did not contest their admissibility. [Tr., 1/27/06, 6, 51-53.] The West Virginia Supreme Court refused the direct appeal from the trial conviction wherein the Petitioner subsequently raised the admissibility of his statements.

That the Petitioner did not contest the admissibility of his statements is consistent with his defense theory that he acted in self-defense. Trial counsel explained in opening:

> [The Petitioner] defended himself. He was frightened. He didn't know why these people were at his door. He had to shoot. We are not going to disagree that he shot the gun. In fact, my client didn't run. He didn't try to hide. He stood there and waited for the police. In fact, he has someone to call 911.

[Tr., 2/7/06, 118.]

The statements reflect that they were obtained after the Petitioner was informed of his *Miranda* rights and waived those rights. [Tr. 2/7/06, 142, 144, 215-217, 252, 256.] "[A] defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." State v. Hager, 204 W.Va. 28, 511 S.E.2d 139, 150 (1998), citing Anderson v. Charles, 447

23

U.S. 404, 408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980).

Ms. Silver testified that the statements could be used to support the Petitioner's theory of self-defense. The statements were inculpatory as to the Petitioner being the shooter--a fact he admitted--but exculpatory as they provided evidence that he explained to the police his justification for acting in self-defense. [Tr. 2/7/06, 215-233, 253-255.]

The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

### d. Allegation about not objecting to the State's opening.

Prosecutorial remarks alleged improper are not constitutional error. State ex rel. Wimmer v. Trent, 199 W. Va. 644, 487 S.E.2d 302, 306 (1997)(claim of prosecutorial misconduct by allegedly improper remarks does not "implicate the appellant's constitutional rights in such a manner as to be reviewable on habeas corpus"); State v. Guthrie, 194 W. Va. 657, 461 S.E.2d 163, 190 (1997)(citing improper prosecutorial remarks in State v. Hobbs, 178 W. Va. 128, 358 S.E.2d 212 (1987), as an example of nonconstitutional error).

"A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed. Syl. Pt. 4, State ex rel. McMannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 805 (1979), *cert. den.*, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983)." State ex rel. Kitchen v. Painter, *supra*. Even were one to assume error in the State's opening, since it is not of constitutional effect, the failure to object cannot be said to give it constitutional effect.

The Petition only alleges unspecified alleged bad acts. [Petition, 8.] Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2. The Petitioner offered nothing further in his testimony.

The Petitioner fails to allege a set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

24

e. Allegation of failure to give adequate opening.

The Petitioner fails to specify either in his pleading or his testimony the alleged inadequacies of his counsel's opening statement. Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2. The Petitioner's only specified complaint is that his trial counsel stated that the Petitioner confessed to killing the victim. The Petitioner *did* confess to killing the victim; his defense theory was that the killing was justified because of self-defense. The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

f. Allegation about cross-examination of officers.

The Petitioner's theory of defense for the shooting of Doakes was self-defense. An intent to kill, one of the necessary elements of Murder in the First Degree, may be inferred by the use of a firearm. The jury was instructed by the trial court that they may so infer. [Instructions 2/8/06, 6.] The record shows that trial counsel sought to dispel from the jury such an inference by asking the testifying officers about their intentions when they carry firearms. [Tr. 2/7/06, 127, 135-136, 143, 179, 234.] Ms. Silver testified that this was her strategy. The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

g. Allegation about stipulation as to expert qualifications of Dr. Haikal.

The Petitioner fails to state how stipulating to the qualifications of the State Medical Examiner was either unreasonable or affected the outcome of his trial, especially since the State had already elicited the Medical Examiner's qualifications. [Tr. 2/7/06, 197-199.] The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

h. Allegation regarding cross-examination of Dr. Haikal.

The Petitioner fails to state how trial counsel's decision to not cross-examine the findings of the State Medical Examiner was either unreasonable or affected the outcome of his trial. The

25

Petitioner admitted that he shot the victim. The Petitioner claimed it was in self-defense. The Medical Examiner was only asked to describe the autopsy and the cause of death. The Medical Examiner offered no testimony that contradicted the Petitioner's theory of self-defense. [Tr. 2/7/06, 197-206.] Ms. Silver testified that the self-defense theory did not require cross-examination on the cause of death. The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

i. Allegation of failure to present evidence or discredit evidence.

The Petitioner fails to specify the alleged inadequacies of his counsel in presenting evidence or discrediting evidence. Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2. The Petitioner failed in his pleading ro testimony to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

j. Allegation of not presenting evidence of self-defense.

The Petition misrepresents to this Court that the trial court did not instruct the jury on self-defense. The record plainly demonstrates otherwise. [Instructions, 2/8/06; Tr. 2/8/06, 111-112.] The Petitioner asserts that there was evidence that warranted the giving of the self-defense instruction. [Petition, 10.] Since the instruction was given, the trial court believed so as well.

A criminal defendant need not prove self-defense by a preponderance of the evidence, but only needs to produce evidence sufficient to create a reasonable doubt on the issue. State v. Thayer, 172 W. Va. 356, 305 S.E.2d 1313 (1983). The Petitioner has not alleged what other evidence was then available to his trial counsel that she failed to introduce. The record demonstrates that trial counsel worked with what she had, eliciting through cross-examination of the investigating officers and/or eyewitnesses that no drugs were found at the Petitioner's apartment, the Petitioner was afraid of the persons at his door, and that the Petitioner stated that he had been recently robbed. [Tr. 2/7/06, 128, 136, 143-144, 178, 227-230, 233, 259; Tr. 2/8/06,

26

42-45.] The trial court found this evidence sufficient to warrant the giving of the self-defense instruction.

The Petitioner fails to specify the alleged inadequacies of his counsel in presenting evidence of self-defense. Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2. The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

k. Allegation that trial counsel forced the Petitioner not to testify.

The Court had the *Neumann* dialogue with the Petitioner, after which the Petitioner informed the Court that it was his choice not to testify. [Tr. 2/8/06, 54-56.] The Petitioner and Ms. Silver each testified before this Court that the Petitioner understood and exercised the right not to testify. The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

l. Allegation of improper closing.

Just as the Petitioner failed to specify the alleged inadequacies of his counsel's opening statement, he also fails to specify any inadequacy in her closing. Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2. The Petitioner's only specified complaint is that his trial counsel stated that the Petitioner confessed to killing the victim. The Petitioner *did* confess to killing the victim; his defense theory was that the killing was justified because of self-defense. The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

m. Allegation of trial counsel mental illness.

Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2. The Petitioner offered no evidence that trial counsel had a mental illness and none was elicited during the habeas hearing. The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v.

27

Painter, *supra*.

n. Allegation of evidence about the Petitioner's physical or mental state.

The record demonstrates that the jury had evidence before it that the Petitioner was sick the night that he shot Doakes. The jury heard testimony that the Petitioner told police that he had an abscessed tooth and was taking antibiotics. [Tr. 2/7/06, 215-217, 254.] The Petitioner's allegation that no such evidence was before the jury is false. Ms. Silver testified that Dr. Lewis found no issue of competency or criminal responsibility that could be used to the Petitioner's benefit at trial. Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2. The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

o. Allegation of character of victim and other witnesses not introduced.

The record demonstrates that the jury had evidence before it that the Petitioner did not know the victim well and that the victim had been in trouble with the law before. [Tr. 2/7/06, 218-219, 226-227.] The record also shows that Petitioner's trial counsel cross-examined Wendell Turner, Cheri Marchesani and Marina Hostler about their substance abuse problems. The Petitioner fails to allege that there is any other evidence of the character of the victim or the other witnesses of which trial counsel could have been aware and which would have furthered his self-defense argument and led the jury to acquit him of the murder of Doakes. Ms. Silver testified that she found no additional helpful information or witnesses. The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

p. Allegation of failure to subpoena witnesses requested by the Petitioner.

The Petitioner fails to identify in his Petition or by testimony any witness that he claims he requested trial counsel to subpoena or identify how their testimony would have furthered his self-defense argument and led the jury to acquit him of the murder of Doakes. Ms. Silver testified that the Petitioner was unable to provide her with any witness names. The Petitioner

28

fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

15. Allegation of failure to assert a mental defense or diminished capacity defense.

At trial, the Petitioner pursued a self-defense theory. In his habeas petition, the Petitioner makes no allegation based upon any fact that, at the time of the offense, he was suffering any mental illness that would have provided him a mental defense or a diminished capacity defense to the crime of Murder in the First Degree. The best that the Petitioner can muster in support of this allegation is that he had an abscessed tooth that day. The Petitioner testified that he has never been diagnosed with a mental illness. Ms. Silver testified that Dr. Lewis found no issue of competency or criminal responsibility that could be used to the Petitioner's benefit at trial.

The Petitioner fails to allege that there was any evidence available to Ms. Silver to establish a diminished capacity defense. *See* Syl. Pt. 3, State v. Joseph, 214 W. Va. 525, 590 S.E.2d 718 (2003).

The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

16. Allegation that trial counsel gave an improper closing.

The record is plain that the Petitioner pursued a self-defense theory, that he shot Doakes but was legally justified in doing so. The Petitioner's cross-examination of the police investigators, and direct examination of the Veteran's Administration officer, was calculated to show that the investigation was not thorough, that the Petitioner's assertions of why he defended himself were not followed up on by the police. Trial counsel sought to have the jury look beyond the surface of the investigation, as that evidence was presented by the State, and question whether the State had actually met its burden of proving Murder in the First Degree.

The record, and Ms. Silver's testimony before this Court, shows that these themes were pursued in her closing argument. [Tr. 2/8/06, 122-126.] That the jury determined that the

29

Petitioner was guilty does not prove that trial counsel was ineffective. The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims, State ex rel. Kitchen v. Painter, *supra*.

17. Allegation of failure to bifurcate; failure to call witnesses for mercy; failure to argue for mercy.

In State ex rel. Kitchen v. Painter, *supra*, the Supreme Court found that trial counsel did not act unreasonably in not introducing character evidence to mitigate his sentence.

The Petitioner has not identified a single witness that could have testified at trial to his character in a way that would have led the jury to mitigate his sentence with a finding of mercy. The testimony the State introduced at trial from people who knew the Petitioner–Cheri Marchesani and Marina Hostler–identified him as a drug dealer. Ms. Silver testified that she found no witnesses that could testify favorably for the Petitioner.

Kitchen also recognized that when there is no mercy evidence to introduce, then a motion for bifurcation is obviated. *Id.*, 700 S.E.2d 489, 501 n. 11.

Ms. Silver testified that the Petitioner's self-defense theory left nothing to argue for mercy. There was no basis in the record for the Petitioner's trial counsel to argue for mercy since no character evidence was presented. The Kitchen Court found that trial counsel was not ineffective for this identical conduct.

The trial court in the Petitioner's case nonetheless instructed the jury that they may grant mercy and instructed the jury as to what the implications of that option were. In Kitchen, the trial court ensured that "the jury was fully informed of the option of recommending mercy as well as the implications of that option." Id., 700 S.E.2d 489, 501. No ineffective assistance of counsel was found in Kitchen. In identical circumstances in the Petitioner's case, no ineffective assistance of counsel is proved by the Petitioner.

The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. State ex rel. Kitchen v. Painter, *supra*.

30

18. <u>Allegation of failure to move for a change of venue.</u>

Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2. The Petitioner cites to no portion of the record that demonstrates that the jury had any fixed opinions about the Petitioner such that they could not impartially judge his guilt or innocence. <u>State v. Derr</u>, 192 W. Va. 165, 451 S.E.2d 731 (1994). There was no difficulty in seating an impartial jury. [Record, *passim.*] Ms. Silver testified that she had no reason to pursue a change of venue motion. The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. <u>State ex rel. Kitchen v. Painter</u>, *supra*.

19. <u>Allegation of Failure to Obtain Grand Jury Minutes or Transcripts.</u>

Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2. The Indictment in the criminal case reflects that the testimony came from Captain Bohrer. The trial transcripts reflect that Captain Bohrer was called as witnesses. Grand jury proceedings are secret. *W.V.R.Cr.P.* 6(e)(2). Although an exception to that rule, or *W.V.R.Cr.P.* 16(a)(3), 12(i) or 26.2, may apply, the Petitioner cites to nothing in the grand jury minutes or transcript that could have been used to impeach Captain Bohrer or any other witness. The Petitioner specifies nothing in the grand jury minutes or transcripts that would have caused the jury to render a more favorable verdict had that information been presented to them.

The Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. <u>State ex rel. Kitchen v. Painter</u>, *supra*.

20. <u>Allegation that appellate counsel failed to raise sufficiency of the evidence argument.</u>

For the reasons noted below that there was sufficient evidence to support the Petitioner's conviction, the Petitioner fails to allege any set of facts that would meet either prong of the two-prong standard necessary to prove ineffective assistance claims. <u>State ex rel. Kitchen v. Painter</u>, *supra*.

The record demonstrates that the Petitioner is not entitled to relief on any of the several

31

allegations of ineffective assistance of counsel. **W. Va. Code** § 53-4A-3(a), -7(a); State ex rel. Markley v. Coleman, *supra*; Perdue v. Coiner, *supra*.

**Sentence Imposed.**

21. A life sentence is the sentence for Murder in the First Degree. **W. Va. Code** § 61-2-2. The jury convicted the Petitioner of that crime and did not grant mercy. Whether to grant mercy, or the eligibility for parole, to a convicted first degree murderer is the sole province of the jury. **W. Va. Code** § 62-3-15. Life imprisonment for first-degree murder without possibility of parole is not cruel and unusual punishment. Syl. Pt. 1, State ex rel. Leach v. Hamilton, *supra*, 280 S.E.2d 62 (1980).

The record demonstrates that the Petitioner is not entitled to relief on this allegation. **W. Va. Code** § 53-4A-3(a), -7(a); State ex rel. Markley v. Coleman, *supra*; Perdue v. Coiner, *supra*.

**False testimony at trial.**

22. This is the first time this issue has been raised. Any ground that a habeas petitioner could have raised on direct appeal, but did not, is presumed waived. Syl. Pts. 1 & 2, Ford v. Coiner, 156 W. Va. 362, 196 S.E.2d 91 (1972).

Even if not waived, the Petitioner is entitled to no relief. The Petitioner offers no evidence in his pleadings or testimony in support of his assertion that the State's witnesses lied at trial. Specificity in habeas pleading is required. **W. Va. Code** § 53-4A-2. The record demonstrates that the Petitioner is not entitled to relief on this allegation. **W. Va. Code** § 53-4A-3(a), -7(a); State ex rel. Markley v. Coleman, *supra*; Perdue v. Coiner, *supra*.

**Sufficiency of the Evidence.**

23. This is the first time this issue has been raised. Any ground that a habeas petitioner could have raised on direct appeal, but did not, is presumed waived. Syl. Pts. 1 & 2, Ford v. Coiner, *supra*, 156 W. Va. 362, 196 S.E.2d 91 (1972).

Even if not waived, the Petitioner is entitled to no relief. Syl. Pt. 1, State v. Miller, 204 W. Va. 374, 513 S.E.2d 147 (1998); Syl. Pt. 3, State v. Williams, 198 W. Va. 274, 480 S.E.2d

32

162 (1996); Syl. Pt. 2, State v. Hughes, 197 W. Va. 518, 476 S.E.2d 189 (1996).

The elements of first degree murder are: a homicide the result of malice or a specific intent to kill which was deliberate and premeditated. State v. Bradford, 199 W.Va. 338, 484 S.E.2d 221, 230 (1997); **W. Va. Code** § 61-2-1.

The evidence was plainly sufficient to support the verdict of guilty for first degree murder. The evidence at trial demonstrated that the Petitioner shot and killed Doakes. The Petitioner does not dispute this fact. Three eyewitnesses, two outside the apartment and one inside the apartment, observed the events leading up to the shooting and/or the actual shooting. The Petitioner yelled at Doakes through the door but made no other efforts before the shooting to ask Doakes to desist, and made no effort to involve law enforcement to remove Doakes. Instead, the Petitioner took a handgun, told the woman in his apartment that he was going to shoot the person at the door, opened the door and shot Doakes, who was then tying his shoe. Once the victim was down, the Petitioner stood over him and shot him twice more. The Petitioner admitted to police that he shot the victim. The gun was recovered from where the Petitioner tried to hide it in a neighbor's apartment.

This evidence was all sufficient evidence to satisfy the elements of Murder in the First Degree. **W. Va. Code** § 61-2-1. The record demonstrates that the Petitioner is not entitled to relief on this allegation. **W. Va. Code** § 53-4A-3(a), -7(a); State ex rel. Markley v. Coleman, *supra*; Perdue v. Coiner, *supra*.

**Competent to Stand Trial.**

24. This is the first time this issue has been raised and is presumed waived. Syl. Pts. 1 & 2, Ford v. Coiner, *supra*.

Even if not waived, the Petitioner is entitled to no relief. *See* Syl. Pt. 7, State v. Chapman, 210 W.Va. 292, 557 S.E.2d 346 (2001). The Petitioner makes no allegation that, at the time of trial, he was suffering any mental illness that rendered him incompetent to stand trial. The Petitioner testified before this Court that he has never been diagnosed as having a mental

33

illness and was seen by a psychologist hired by trial counsel. Ms. Silver testified that Dr. Lewis evaluated the Petitioner before trial and found him to be competent and criminally responsible.

The record demonstrates that the Petitioner is not entitled to relief on this allegation. **W. Va. Code** § 53-4A-3(a), -7(a); State ex rel. Markley v. Coleman, *supra*; Perdue v. Coiner, *supra*.

### Standards for Granting Mercy.

25. The Petitioner withdrew this claim at the habeas hearing. Moreover, the law is plain and unambiguous in this State that an instruction to the jury outlining factors to be considered in determining mercy in murder cases should not be given. Syl. Pt. 1, State v. Miller, 178 W. Va. 618, 363 S.E.2d 504 (1987); Billotti v. Dodrill, 183 W.Va. 48, 394 S.E.2d 32, 41 (1990).

The record demonstrates that the Petitioner is not entitled to relief on this allegation. **W. Va. Code** § 53-4A-3(a), -7(a); State ex rel. Markley v. Coleman, *supra*; Perdue v. Coiner, *supra*.

### Mandatory Appellate Review.

26. The Petitioner withdrew this claim at the habeas hearing. Moreover, the West Virginia Supreme Court of Appeals is very clear that its discretionary review of a conviction does not violate a criminal defendant's guarantee of due process and equal protection of the law. Syl. Pt. 4, Billotti v. Dodrill, *supra*, 183 W. Va. 48, 394 S.E.2d 32 (1990).

The record demonstrates that the Petitioner is not entitled to relief on this allegation. **W. Va. Code** § 53-4A-3(a), -7(a); State ex rel. Markley v. Coleman, *supra*; Perdue v. Coiner, *supra*.

### Miscellaneous Unsupported Grounds.

27. This is the first time that any of these issues have been raised and they are presumed waived. Syl. Pts. 1 & 2, Ford v. Coiner, *supra*. Even if not waived, the Petitioner is entitled to no relief. The Petitioner fails to allege any set of facts or law in support of the following allegations, each of which are hereby denied. **W. Va. Code** § 53-4A-3(a), -7(a); State ex rel. Markley v. Coleman, *supra*; Perdue v. Coiner, *supra*.

a. *Indictment shows on its face that no offense was committed.*

34

The Petitioner waived this allegation at the habeas hearing. The record shows that the Petitioner never objected to the Indictment at trial or on appeal. Syl. Pt. 1, <u>State v. Miller</u>, 197 W.Va. 588, 476 S.E.2d 535 (1996). The Petitioner offered no basis that the indictment is defective.

b. *Information in Pre-sentence Report.*

The record demonstrates that no PSI was prepared since the statutory penalty is a life sentence and the jury granted no mercy so the trial court proceeded directly to sentencing.

c. *Irregularities in arrest.*

The Petitioner's allegation is that VA Officer Anderson was involved in the investigation. The record shows that Anderson arrived on the scene because he worked at the adjoining property. There is nothing in the record to demonstrate that Anderson arrested the Petitioner. The Petitioner's unsupported belief that others involved in the case "struck a deal with law enforcement" are not allegations concerning an irregularity in his arrest.

d. *Excessiveness of Bail.*

The Petitioner was not entitled to bail since he was charged with murder.

e. *Improper use of Informers/Failure to Confront Accusers.*

The Petitioner offers no evidence in support of this allegation.

f. *Improper Statements by Prosecution.*

The record demonstrates that there were not improper remarks by the Prosecution regarding the Petitioner's right to remain silent. [Tr. 2/7/06, 141-142.] Prosecutorial remarks alleged improper are not constitutional error. <u>State ex rel. Wimmer v. Trent</u>, *supra*; <u>State v. Guthrie</u>, *supra*.

g. *Failure to provide copy of indictment.*

The Petitioner cites to nowhere in the record to support his belief that he did not receive a

35

copy of his indictment. Nor does the Petitioner demonstrate how that could have adversely affected the outcome of his trial.

h. *Failure of trial court to give jury instructions.*

i. *Deadly force by occupant.*

The Petitioner cites to nowhere in the record where such an instruction was requested, or to law requiring such an instruction or evidence to such an instruction.

ii. *First and second degree murder and malice inference.*

The Petitioner cites no law that supports these allegations. Both sides offered the same inferred malice instruction, which was given. [Tr. 2/8/06, 83, 108.] Malice, willfulness and deliberation, elements of crime of first-degree murder, may be inferred from intentional use of deadly weapon. State v. Ferguson, 165 W.Va. 529, 270 S.E.2d 166 (1980).

iii. *Involuntary manslaughter.*

An instruction for involuntary manslaughter was neither asked for nor supported by the evidence and was not given. [Tr., 2/8/06, 78.]

iv *Self-defense.*

The record demonstrates the trial court gave the Petitioner's self-defense instruction. [Tr. 2/8/06, 93-96, 100, 111-112.]

v. *Excessive sentence.*

> "Sentences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review." Syl. Pt. 4, State v. Goodnight, 169 W.Va. 366, 366, 287 S.E.2d 504, 505 (1982).

Syl. Pt. 6, State v. Woodson, 222 W.Va. 607, 671 S.E.2d 438 (2008); Syl. Pt. 6, State v. Slater, 222 W.Va. 499, 665 S.E.2d 674 (2008); Syl. Pt. 3, State v. Tyler, 211 W.Va. 246, 565 S.E.2d 368 (2002).

36

The Petitioner concedes that he was sentenced to the statutory sentence of life without mercy for his first degree murder conviction. That sentence is not reviewable.

**Grounds Expressly Waived.**

28. The Petitioner expressly waived on his filed, signed and verified Losh list the following grounds: 1, 5, 6, 10, 12-14, 22, 25, 27, 28, 31, 33, 35-38, and 46. [Losh List.] Losh v. McKenzie, *supra*. The record is plain that the Petitioner is not entitled to any relief on the above expressly waived grounds. **W. Va. Code** § 53-4A-3(a), -7(a); Perdue v. Coiner, *supra*.

29. The Petitioner's habeas counsel was appointed to file an amended habeas corpus petition on the Petitioner's behalf and did so. Neither **W. Va. Code** § 53-4A-1, *et seq.*, nor the *W.V.R. Governing Post-conviction Habeas Corpus Proceedings* authorize the attachment of the Petitioner's original *pro se* Petition to the Amended Petition as a means to bring the *pro se* matters forward without further support. The Court finds all such allegations unsupported by factual or legal allegation and denies each. **W. Va. Code** § 53-4A-3(a), -7(a); State ex rel. Markley v. Coleman, *supra*; Perdue v. Coiner, *supra*.

ACCORDINGLY, the Amended Petition for Writ of Habeas Corpus is DENIED.

The Clerk shall enter this Order as of the date noted below and shall transmit attested copies to: counsel of record.

ENTERED: _Jan 13, 2012_

_____
HONORABLE GINA M. GROH
CIRCUIT JUDGE

Prepared by: _____

_____
Christopher C. Quasebarth
Chief Deputy Prosecuting Attorney
State Bar No.: 4676

A TRUE COPY
ATTEST
Virginia M. Sine
Clerk Circuit Court
By: _____
Deputy Clerk

37